No. 13,997.

Miller *v.* Goff.
(68 P. [2d] 915)

Decided May 24, 1937.

Messrs. HINDRY, FRIEDMAN & BREWSTER, Mr. H. R. HINDRY, for plaintiff in error.

Mr. FOSTER CLINE, Mr. GEORGE A. TROUT, Mr. CHARLES J. KELLY, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THE parties hereto will be mentioned as plaintiff and defendant, as they appeared in the trial court.

In 1920 and 1921 plaintiff, Fred Rogers and Harry Rogers, working together, were attempting to acquire the rights of prior locators on claims in the Salt Creek oil field in Wyoming, particularly the Linn, MacFarland, Andrew Simmons, Annen Simmons and Milan claims. The Midwest Oil Company obtained a lease from the Federal Government including these claims and was desirous of acquiring the rights existing by virtue of the prior claims, its lease being subject to these rights under the provisions of the Federal "Leasing Act." Plaintiff and his then associates enlisted the aid of defendant in acquiring the claims and disposing of them to the Midwest Oil Company. Defendant was experienced in such matters and felt confident that he could accomplish the sale through F. G. Bonfils of Denver. Thereupon, after defendant had obtained the services of Patten, an attorney at Casper, Wyoming, and Scott, an abstractor of titles, to further the proposed sale of the claims, plaintiff, defendant, the Roger brothers, and Patten, on October 26, 1921, to establish their interests in this undertaking, entered into a written agreement fixing the interests of all parties thereto and the measure of a division of such proceeds as might be received from the sale of the claims as proposed. This agreement, Exhibit Q, is as follows:

"Memoranda of Agreement, made and entered into this twenty-sixth day of October, 1921, by and between

Fred B. Rogers, Harry R. Rogers, George Goff, and W. H. Patten, parties of the first part, and Henry A. Miller, party of the second part;

"Witnesseth: Whereas, all of said parties have rendered services and expended money in gathering information and procuring titles to oil lands in the Salt Creek Field, Natrona County, Wyoming, including the Linn, McFarland, Andrew Simmons, Annen Simmons, and Milan, and are using their best efforts to secure other titles; and

"Whereas, the said Henry A. Miller, representing the parties of the first part, and himself, is negotiating for a settlement, sale or other disposition of said titles, with knowledge and consent of the parties of the first part, it is mutually agreed and understood that of any and all moneys, lands, royalties, or interests in lands or royalties or other property he may receive by and through such settlement, sales, etc., two (2%) per cent shall be paid to the abstractor of Natrona County, Wyoming, who has performed and is performing services in the aid of this enterprise, and all of the rest and residue of such receipts shall be divided equally between the five parties to this agreement, share and share alike.

"It is understood, that unless otherwise agreed in writing the said party of the second part shall not negotiate for a settlement, sale, or other disposition of said titles which will not realize to all of the parties to this agreement, and the said abstractor at least seventeen and one-half (17½) per cent of the whole.

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

"Fred B. Rogers   (Seal)
"Harry R. Rogers  (Seal)
"George Goff     (Seal)
"W. H. Patten    (Seal)
"Henry A. Miller  (Seal)"

Sale of the interest represented by Andrew Simmons and Annen Simmons claims to the Midwest Oil Company was consummated through F. G. Bonfils of Denver by defendant. Plaintiff alleges that the sum of $148,500 was paid to Bonfils, who, with John T. Bottom his attorney, and defendant, distributed the money. Bonfils, Bottom and defendant informed those interested, being the parties to the written agreement herein set out, that the amount received was $125,000 and distribution was made on that basis by Bottom and defendant. Plaintiff received $3,413.10, and a like amount was paid to the Rogers brothers and to defendant Miller and Patten, but in addition thereto, Miller was paid $25,381.74 and Patten received $24,981.74. The amount being short of what it should have been under the written agreement on a distribution of $125,000, plaintiff inquired of Patten and Bottom about the discrepancy and was by them informed that the owner of the Milan claim had been paid a certain sum of money for releasing a case in the United States District Court against the Midwest Oil Company which had been instituted against the latter for damages. It appears that the purpose of the action was to effect or bring about the sale of the claims to the Midwest Oil Company, and it was on a compromise and dismissal of this suit that the money was paid to Bonfils for the two Simmons claims. The distribution herein referred to was made about June 1, 1924, and the entire matter so remained until August of 1931, when a widow of one of the Rogers brothers learned through an attorney of the Midwest Oil Company that $148,500 had been paid in the settlement instead of $125,000, which information she conveyed to plaintiff immediately, and they had a meeting with Bottom in the latter's office. Plaintiff, then learning for the first time of this situation and being unable to obtain a satisfactory explanation from Bottom, Bonfils or defendant, brought suit in the district court of the City and County of Denver January 11, 1932—joining with himself the Rogers' interest—as plaintiff,

against F. G. Bonfils as defendant. The suit was for an accounting of the amounts received for the Simmons claims, and for judgment, if any amount was found to be due under the written agreement herein set out. Bonfils died and his executors, after being substituted as defendants, on March 31, 1933, settled the litigation by the payment of $7,500 to the plaintiffs therein. Effort then was made by plaintiff to obtain further payments from defendant Miller, which being without avail, this suit was instituted in the district court of Denver for a money judgment in the sum of $6,702.45 with interest from May, 1924, and for body execution against defendant Miller. Plaintiff in this suit claimed that defendant Miller received $60,602.78 in the settlement of the Simmons claims, which should have been divided between plaintiff, Patten, Miller, Scott and the Rogers brothers according to the written agreement, but that instead the money was distributed to corporations owned by Patten and defendant Miller. The case was tried to the court without a jury and it found that defendant Miller had received $60,602.78 in settlement of the Simmons claims and gave plaintiff judgment in the sum of $10,335.36. This judgment was founded largely by the court upon its conclusion that defendant Miller had violated his duty to his associates or joint adventurers in the enterprise.

It appears that defendant Miller received $20,818.64 in addition to the $3,413.10 heretofore mentioned, on the claim that it was for services rendered Bonfils over a period of years in connection with obtaining oil leases for Bottom. Patten received a like amount upon his agreement not to use information he had acquired in obtaining titles to these claims against the Midwest Oil Company in the future. To the judgment so rendered, defendant Miller assigns error, relying for a reversal mainly upon the grounds: That plaintiff's evidence does not sustain the judgment; that his claims against defendant Miller were adjudicated in the action against Bonfils; and that the claim is barred by laches and the statute of limitations.

As to the first contention, we find there was sufficient competent evidence submitted to the court upon controverted facts to sustain the judgment and it cannot be disturbed on this ground under the well settled rule of this court. On the question of plaintiff's claim having been adjudicated in the suit against Bonfils, it is sufficient to say that that was a separate action in accounting against a different party defendant, and on the compromise thereof any amount received by plaintiff was on the liability of that particular defendant, even though it was to be determined largely upon the written contract hereinbefore mentioned; also set out in the suit against Bonfils. The suit against Bonfils was in equity, while this action against defendant Miller is one at law for money had and received under said coadventurers' written agreement. The remedies plaintiff has sought in these two actions are consistent and independent and the judgment or compromise in the Bonfils' suit in no way prejudiced defendant Miller herein.

On defendant's contention that the three year statute of limitations is a bar in this action and that plaintiff is chargeable with what he might have discovered had he been diligent, there is no question about the elapsed time before the bringing of this case being in excess of the period fixed by statute, but plaintiff's position, which we think well taken, is that this action was instituted after the discovery of the alleged fraud within the time limit fixed by the statute. It is true that the record discloses no attempt on the part of the plaintiff to make further investigation after receipt of the check in the sum of $3,413.10, and that it is in evidence that the books of attorney Bottom were open for inspection at all times, which would permit a discovery of any difference that could now be claimed. However, the existing coadventure and confidential relationship between plaintiff and defendant, when defendant had been entrusted with the management of the undertaking, charged him with the duty of a full and complete disclosure to plaintiff of all details of the trans-

action. Failing therein he will not now be permitted to assert lack of diligence on the part of plaintiff. This relationship is an important circumstance to be considered in a determination of whether plaintiff's delay is fatal. If defendant was representing plaintiff while this confidential relationship existed, and he took advantage of the confidence reposed in him, as was evidently the conclusion of the trial court which was supported by sufficient evidence, the lapse of time does not bar plaintiff's suit for relief, because of defendant's concealment of the real facts. Plaintiff was not under the same strict requirement of inquiry as would have been the case had he been dealing with a stranger. That such a relationship existed is clearly disclosed by the written agreement under which both parties operated as between themselves.

The details of the evidence concerning the distribution as made upon the representations of Bonfils, Bottom and defendant Miller, need not be herein further reviewed. It is sufficient to say that plaintiff's only concern now is as to the $60,602.78 which Bottom, under the directions of Bonfils and defendant Miller, paid to the five joint coadventurers. In the absence of anything in the written agreement to the contrary, plaintiff's share in those amounts must be and were properly fixed by the trial court as an equal one-fifth interest. Through the settlement, he did not receive the full amount of that interest, but it now is properly reflected in the judgment of the trial court which is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE KNOUS concur.